UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BUILDERS BANK,  :
 :  **MEMORANDUM AND ORDER**
 Plaintiff, :  09-cv-4314 (DLI) (CLP)
 :
 -against- :
 :
NEWLAND GROUP, LLC, et al., :
 :
 Defendants. :
 :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

On October 7, 2009, plaintiff Builders Bank ("Builders Bank" or "plaintiff") brought this civil action against Newland Group, LLC ("Newland") and Mordechay Movtady ("Movtady") (collectively, "defendants"), seeking to foreclose on a two-story commercial building at 614-626 Sheepshead Bay Road, Brooklyn, New York (the "Property"). (Compl. ¶ 1, Doc. Entry No. 1.) On September 5, 2012, plaintiff informed the Court that the parties had entered into a settlement and subsequently submitted the following three-part settlement papers: (1) the Settlement Agreement dated August 30, 2012, (2) the Agreed Order, and (3) the Proposed Order and Judgment of Foreclosure and Sale. (Doc. Entry No. 56 and attachments.)

By letter dated October 12, 2012, attorneys for Alexander Gliklad ("Gliklad") and Isabella Devterova ("Devterova"), who are not parties to the litigation, claimed that Gliklad and Devterova now controlled the membership interest in Newland and Newland was not bound by the Settlement Agreement, because Movtady did not have the authority to act on behalf of Newland. ("Gliklad/Devterova Letter," Doc. Entry No. 61.) On October 15, 2012, Builders Bank responded that the Gliklad/Devterova claims did not affect the binding nature of the Settlement Agreement and urged the Court to endorse the submitted Agreed Order. (Pl. Resp.

1

Letter, Doc. Entry No. 62.) For the reasons set forth below, the Court finds that the Gliklad/Devterova claims do not affect the fully executed and binding settlement, and, therefore, the Agreed Order and Proposed Judgment of Foreclosure and Sale, upon endorsement by the Court, are enforceable as executed.

## **BACKGROUND**[1]

On October 7, 2009, plaintiff Builders Bank, an Illinois banking corporation, filed this action against Newland, a limited liability company, and Movtady, a resident of Kings Point, New York, seeking to foreclose the Property. Plaintiff alleged that Movtady was the sole member of Newland.

**A.    The Loans**

The underlying facts of this action relate to a series of loans plaintiff provided to Newland for the Property and related agreements. Plaintiff alleges that, on December 23, 2004, it made an initial loan of $2,000,000.00 to Newland and executed a Note and Mortgage memorializing the transaction to finance the costs related to the construction of the Property. (Compl. ¶¶ 6, 10.) The Property is owned by Newland and is leased for use as a spa, gym, and three eating and drinking establishments. (Rozengauz Sept. 13, 2011 Letter at 1, Doc. Entry No. 28.) On December 2, 2005, plaintiff agreed to extend the maturity date of the loan another year and to lend Newland an additional $3,000,000.00. Plaintiff thereafter extended the maturity date to September 5, 2007. (Compl. ¶ 9.) On September 5, 2007, plaintiff agreed to lend an additional $4,206,000.00 to Newland, and the parties executed a Consolidated Note and Mortgage memorializing this transaction. (*Id.* ¶ 11.) The total sum borrowed at this point was

---

[1] Familiarity with the facts and circumstances of this case is assumed and only those facts necessary for the resolution of the instant request have been included. For a thorough discussion of the background of this case see the Report and Recommendation issued by the Hon. Cheryl L. Pollak, U.S. Magistrate Judge, on August 2, 2012. (*See* R&R, Doc. Entry No. 45.)

$9,206,000.00. (*Id.*) The maturity date of the consolidated loan later was extended to September 5, 2008. (*Id.* ¶ 13.) Plaintiff alleges Movtady executed a personal guarantee, promising to repay all the sums due under the original December 23, 2004 Note, the December 2, 2005 Note, and the 2007 Consolidated Note. (*Id.* ¶ 14.)

On February 19, 2009, plaintiff and Newland entered into a "Consolidated and Restated Note," which consolidated all previous note amounts into a Restated Note, under which Newland owed the unpaid balance of $9,422,201.00. (*Id.* ¶ 15.) Under the Restated Note, Newland would pay the interest payments due on the outstanding principal balance and a principal payment of $6,075.00 every month starting on March 5, 2009, and the maturity date was extended to December 5, 2011. (*Id.* ¶ 16.) Movtady executed a full guarantee of all obligations of the Restated Note. (*Id.* ¶ 18.) On February 19, 2009, the parties entered into a Consolidated First Mortgage, Security Agreement, and Fixture Filing, duly recorded in the City Register on March 16, 2009, which provided that, in the event of default, plaintiff, as lender, may declare the whole indebtedness immediately due and payable without further notice to Newland, as borrower. (*Id.* ¶ 19.) Plaintiff alleges the mortgage documents also provide that, in case of a sale on foreclosure, the premises may be sold as one parcel. (*Id.* ¶ 21.)

Plaintiff contends that, beginning June 5, 2009, Newland failed to make the payments due under the agreements and certain required real estate tax deposits. (*Id.* ¶ 24.) On August 3, 2009, plaintiff notified Newland it was in default, accelerated the loan, and demanded full payment. (*Id.*, Ex. M.)

**B.     Commencement of the Action and the Stipulation**

On October 7, 2009, plaintiff commenced this foreclosure action based on defendants' failure to make payments under the loans as agreed. On November 20, 2009, plaintiff entered

into a stipulation with Movtady, on behalf of himself and Newland (the "Stipulation"). The Honorable David G. Trager, Senior U.S. District Judge, endorsed the Stipulation on September 15, 2010. (Stipulation and Order ("Stip."), Doc. Entry No. 3.)[2] The Stipulation provided that plaintiff would make an additional loan to Newland to construct a parking facility at 2831 West 8th Street, Brooklyn, NY, for the benefit of the Property. (*Id.* ¶ 5.) As consideration, defendants Newland and Movtady agreed that, while this action was pending, they would not answer or move to dismiss the complaint, initiate adversarial legal or administrative proceedings that may hinder or delay the process of the foreclosure action, would agree all allegations in plaintiff's complaint were true, and waive all claims against plaintiff arising out of the circumstances surrounding the loan. (Stip. ¶¶ 1, 2, 9.)

**C.  Rozengauz and the Report and Recommendation**

By letter dated August 25, 2011, Yan Rozengauz, previously not a party to the action, claimed that his 50 percent ownership of Newland made him a principal who could act on behalf of Newland. (Doc. Entry No. 23.) His attorney, Matthew S. Aboulafia, Esq., filed a notice of appearance on behalf of Rozengauz and Newland, even though Newland was already represented. (Doc. Entry No. 22.) By letter motion dated January 12, 2012, Rozengauz moved to vacate the Stipulation, requested immediate access to the Property and sought sanctions against plaintiff and Movtady. (Doc. Entry No. 34.) The motion was referred to U.S. Magistrate Judge Cheryl L. Pollak who, by Report and Recommendation dated August 2, 2012, recommended that Rozengauz's motion be denied, because he did not have the capacity to act as Newland's agent or the standing to assert claims on Newland's behalf. (*See* R&R at 20, Doc. Entry No. 45.) The Magistrate Judge further found that any attempt by Rozengauz to join this

---

[2] This matter was reassigned on January 28, 2011 to the instant presiding judge upon the passing of Sr. Judge Trager.

action in his individual capacity as a member of the LLC would be unavailing given that the subject property is owned by the LLC, not Rozengauz. (*Id.*) Neither party objected to the Report and Recommendation. However, before this Court could act on the Report and Recommendation, the parties informed the Court they had reached a settlement and requested that the Court not determine whether to adopt the Report and Recommendation.

**D.    Settlement Agreement and the Gliklad/Devterova Letter**

On September 5, 2012, plaintiff submitted the three-part settlement papers: (1) the Cooperation and Settlement Agreement ("Settlement Agreement") dated August 30, 2012, (2) the Agreed Order, and (3) the Proposed Order and Judgment of Foreclosure and Sale (collectively "the Settlement"). (Doc. Entry No. 56 and attachments.) The Settlement joins all parties who could have or ever had claimed any interest in the subject property, namely: Builders Bank, Newland, Movtady, Rozengauz, Sheepshead Bay Spa Center Inc., a New York corporation ("Spa Tenant"), and Sheepshead Bay Restaurant Inc., a New York corporation ("Restaurant Tenant").

The first part of the Settlement, the Settlement Agreement, is only among plaintiff and the "Adverse Parties," namely Rozengauz, the Spa Tenant and the Restaurant Tenant, and incorporates by reference the Agreed Order, signed by all the parties, that is attached as an exhibit to the Settlement Agreement. (Settlement Agr. ¶ 1, Doc. Entry No. 56-1.) The effective date of the Settlement Agreement is August 30, 2012. Under the Settlement Agreement, the Adverse Parties, *inter alia*, agree to release plaintiff from claims relating to the loans, not to interfere with plaintiff's enforcement of the loan documents, and cooperate with plaintiff to expeditiously foreclose the Property. (*Id.* ¶¶ 2, 3, 5.) Further, the Spa and Restaurant Tenants, though they were not parties to the action or Rozengauz's motion to vacate the Stipulation, agree

to be bound by the Settlement Agreement. (*Id.* ¶ 4.) In turn, plaintiff agrees to comply with certain terms regarding the foreclosure action. (*Id.* ¶ 6.)

The Agreed Order provides that: (1) plaintiff may proceed in this foreclosure suit as if by default; (2) no party, other than plaintiff, will appear or participate in the foreclosure suit after entry of the Agreed Order; and (3) the parties consent to entry of the Order and Judgment of Foreclosure and Sale, included as an attachment to the Settlement Agreement. (*See* Agreed Order, Doc. Entry No. 56-2; *see also* Pl. Resp. Letter at 4.)

In the Proposed Order and Judgment of Foreclosure and Sale, plaintiff requests entry of a judgment of foreclosure and outlines the terms for the foreclosure sale agreed to by the parties. (Order and Judgment of Foreclosure and Sale, Doc. Entry No. 56-3 (also attached to signed Agreed Order, Doc. Entry No. 56-2).)

Alexander Gliklad and Isabella Devterova are not parties to this litigation. They claim that, together, they now control 75% of the membership interest in Newland. (Gliklad/Devterova Letter at 1.) Gliklad allegedly acquired 25% of Newland on October 8, 2012 when Rozengauz forfeited all of his interest and Devterova allegedly acquired 50% of Newland (previously controlled by Movtady) by auction on October 11, 2012. (*Id.*) On October 12, 2012, attorneys for Gliklad and Devterova wrote a letter to the Court stating neither Movtady nor his counsel have the authority to bind Newland to an agreement and, therefore, Newland has not agreed to or signed the settlement. (*Id.*)

In response, on October 15, 2012, plaintiff submitted a letter urging the Court to ignore the Gliklad and Devterova letter and proceed with endorsing the Agreed Order. (Pl. Resp. Letter at 1.) Plaintiff argues that neither Gliklad nor Devterova are parties to the case, their attorneys have not appeared in the case, and they are not moving to intervene under Federal Rules of Civil

Procedure Rule 24. (*Id.* at 1-2.) Plaintiff further contends that Gliklad and Devterova have not completed fully the requirements for membership set forth in Newland's Security Agreement and Operating Agreement, and, even if they had, they lack standing to intervene. (*Id.* at 2-3.) Lastly, plaintiff argues that, on September 4, 2012 the Settlement Agreement was executed by Movtady, who, at the time of signing, was the managing member of Newland and authorized to act on behalf of Newland. Therefore, Newland was bound by the Settlement Agreement before Gliklad or Devterova acquired any putative membership interest. (*Id.* at 4.)

## DISCUSSION

"It is settled law that a 'settlement is a contract, and once entered into is binding and conclusive.'" *J&J Sports Productions, Inc. v. Payano*, 2007 WL 2572112, at *1 (E.D.N.Y. June 28, 2007) (quoting *Janneh v. GAF Corp.*, 887 F. 2d 432, 435-36 (2d Cir. 1989), *cert. denied,* 498 U.S. 865 (1990)); *see also Collins v. Harrison-Bode*, 303 F. 3d 429, 433 (2d Cir. 2002) ("It is well established that '[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law.'") (quoting *Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F. 3d 481, 484 (2d Cir. 1999)); *Geller v. Branic Int'l Realty Corp.*, 212 F. 3d 734, 737 (2d Cir. 2000) ("We have often compared stipulated settlements to contracts, and we have consistently applied the law of contract to disputes concerning the construction and enforcement of settlements."). To have a binding settlement agreement, pursuant to New York law, there must be "an offer, acceptance, consideration, mutual assent and intent to be bound." *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006). Further, under New York law, a settlement or stipulation is generally binding on the parties "that have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their stipulation to a properly subscribed writing or enter the stipulation orally on the record in open court." *Arthur*

*the Dog v. U.S. Merchandise Inc.*, 2007 WL 2493427, at *4 (E.D.N.Y. Aug. 29, 2007) (quoting *McCoy v. Feinman*, 99 N.Y. 2d 295, 303 (2002), modified Mar. 21, 2003); *see also* N.Y. C.P.L.R. § 2104.

Settlement agreements to end litigation are strongly favored by courts and are not lightly cast aside. *Delyanis*, 465 F. Supp. 2d at 173. "Once reached by the parties, settlement agreements are binding and enforceable." *Id.* "Where the language used in the signed release or settlement is clear and unambiguous, summary enforcement is appropriate." *In re Air Crash Disaster off Coast of Nantucket Island, Massachusetts on October 31, 1999*, 2010 WL 1221401, at *2 (E.D.N.Y. Mar. 29, 2010) (citing *Omega Eng'g v. Omega, S.A.*, 432 F. 3d 437, 444 (2d Cir. 2005) ("A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous.")).

As set forth above, the instant settlement clearly satisfies all of the criteria for an enforceable settlement agreement under New York law. The Settlement: (1) was put forth fully in writing and executed by all parties; (2) the terms of the agreement are clear and unambiguous; (3) the parties have clearly communicated an intent to be bound by the fully executed document; and (4) continue to demonstrate that intent. None of the parties to the settlement or the action challenge the settlement's enforceability. Gliklad and Devterova are not parties to this action. They have not moved to intervene pursuant to Fed. R. Civ. P. Rule 24, nor has their counsel made a Notice of Appearance in this action. Moreover, Gliklad, Devterova and their counsel were aware of this litigation for over a year and choose neither to intervene nor exercise any rights pursuant to any purported membership interest in Newland before October 2012. (*See* Pl. Resp. Letter at 2 (contending Gliklad could have declared forfeiture and acquired Newland membership interest any time over the last five years and Devterova could have exercised

8

putative rights to Newland membership interest as of May 2011); *id.* Ex. A, B.) Gliklad and Devterova do not claim that the settlement is ambiguous, or the product of fraud, coercion, mistake, duress, or "any other ground typically asserted to invalidate a settlement." *In re Air Crash Disaster off Coast of Nantucket Island*, 2010 WL 1221401, at *2. Their only claim is that the settlement is not binding on Newland, because neither Movtady nor his counsel has the "present authority" to bind Newland under the Settlement. (Gliklad/Devterova Letter at 1.) These meritless claims do not undermine the Settlement.

The three-part settlement was reduced to writing and fully executed by September 4, 2012. At the time the settlement was executed by the parties, Movtady was the managing member of Newland and, as Magistrate Judge Pollack found, "was the sole member with capacity to act for [Newland] in this litigation." (R&R at 16.) In fact, Gliklad and Devterova are not contesting this point. They merely state that "as of October 11, 2012, Mr. Movtady and his counsel no longer have any rights with respect to Newland Group," thus tacitly acknowledging that Movtady had the capacity to act on behalf of Newland *prior* to October 11, 2012. (Gliklad/Devterova Letter at 2.) Further, all the facts alleged in the Gliklad/Devterova letter occurred *after* Movtady signed the settlement on behalf of Newland on September 4, 2012. According to the Gliklad/Devterova letter, Gliklad allegedly obtained membership interest in Newland on October 8, 2012. Devterova acquired Newland membership interest and Alexander Silver, Esq. was designated sole manager of Newland on October 11, 2012. (*Id.*) When the settlement was negotiated, finalized and signed, Movtady had the authority to sign and act on behalf of Newland and thus bind Newland. Therefore, on September 4, 2012, when the settlement was fully executed, the parties to the settlement were bound by the terms of the Settlement Agreement and the Agreed Order. Any change of membership interest in Newland or

designation of manager of Newland that occurred *after* the settlement was executed and the parties were bound, does not undo the settlement.

Gliklad and Devterova claim they wish to resolve the matter in a way that "does not require the intervention of this Court's (sic) and its resources." (Gliklad/Devterova Letter at 2.) While the Court appreciates the concern for its resources, the Court has an obligation to the litigants before it to protect and preserve their interests and any settlement negotiated and fully executed in good faith. "A district court may exercise its inherent power to protect the parties appearing before it, to preserve the integrity of an action, to maintain its ability to render a final judgment and to ensure the administration of justice." *Haitian Ctrs. Council, Inc. v. Sale*, 817 F. Supp. 336, 337 (E.D.N.Y. 1993).

Absent special circumstances, this Court has the responsibility to promote the efficient resolution of actions and the responsibility to enter and enforce the Settlement. *See Jankowski v. Castaldi*, 2010 WL 882867, at *5 (E.D.N.Y. Mar. 12, 2010) ("Absent special circumstances, such as a material breach of the agreement or duress, '[i]t is beyond a district judge's discretion to alter the terms of or to refuse to enforce a settlement agreement.'" (quoting *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 687 F. 2d 626, 629 (2d Cir. 1982))). "There is a 'public interest in promoting settlement of lawsuits' and the 'courts [ ] have a responsibility to promote settlements.'" *Janus Films*, 801 F. 2d at 584 (quoting *U.S. v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 33 (E.D.N.Y. 2006)). There are no such special circumstances here. Accordingly, this Court will enter the Agreed Order and the Order and Judgment of Foreclosure and Sale.

## **CONCLUSION**

For the foregoing reasons, the request to find the Settlement Agreement invalid and non-binding is denied. The Court will separately endorse and file the Agreed Order and Order and Judgment of Foreclosure and Sale.

SO ORDERED.

Dated: Brooklyn, New York
January 31, 2013

/s/
DORA L. IRIZARRY
United States District Judge